# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ZAYO GROUP HOLDINGS, INC., )
)
              Plaintiff, )
)
    v. )   **C.A. No. N23C-04-260 PRW**
)                    **CCLD**
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA, *et al.*, )
)
          Defendants. )

Submitted:  July 20, 2026
Decided:  August 5, 2026

*Upon Defendant Insurers'*
*Motion for Summary Judgment,*
**GRANTED.**

*Upon Plaintiff Zayo Group Holding's*
*Motion for Partial Summary Judgment,*
**DENIED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Ryan D. Kingshill, Esquire, and Jennifer C. Wasson, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware; Tamara D. Bruno, Esquire (*argued*), Pillsbury Winthrop Shaw Pittman LLP, Houston, Texas; Peter M. Gillon, Esquire, Pillsbury Winthrop Shaw Pittman LLP, Miami, Florida; William C. Miller, Esquire, Pillsbury Winthrop Shaw Pittman LLP, Washington, District of Columbia, *Attorneys for Plaintiff Zayo Group Holdings, Inc.*

Kurt M. Heyman, Esquire (*argued*), and Aaron M. Nelson, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; Scott B. Schreiber, Esquire, Arthur Luk, Esquire, and William C. Perdue, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, District of Columbia; Joshua W. McCollum, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Houston, Texas; Zachary T. Morris, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Los Angeles, California, *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

Robert J. Katzenstein, Esquire, and Julie M. O'Dell, Esquire, SMITH KATZENSTEIN JENKINS LLP, Wilmington, Delaware; Daniel W. London, Esquire, and Jan H. Duffalo, Esquire, LONDON FISCHER LLP, New York, New York; Michael R. Goodstein, Esquire, and James M. Young, Esquire, BAILEY CAVALIERI LLC, Columbus, Ohio, *Attorneys for Defendants ACE American Insurance Company, and Arch Insurance Company.*

**WALLACE, J.**

This insurance coverage dispute arises from a settlement reached by the Zayo shareholders after affiliates of Digital Colony Partners acquired Zayo. Defendants National Union Fire Insurance Company of Pittsburgh, Pa., ACE American Insurance Company, and Arch Insurance Company (collectively, the "Insurers") insist that the Zayo policy's bump-up exclusion excludes settlement coverage. The Parties cross-move for summary judgment on the bump-up exclusion's impact on settlement coverage—while identifying no disputed material facts that prevent judgment on the exclusion's applicability. The Insurers also move for summary judgment on Zayo's bad-faith coverage-denial claim. Because the underlying shareholders sued for increased consideration and the at-issue settlement amount went to those shareholders on a per-share basis, the settlement represented an effective increase in consideration, and the bump-up exclusion precludes coverage.

For these reasons, the Insurer's Motion for Summary Judgment is **GRANTED**, and Zayo's Motion for Summary Judgment is **DENIED**.

# I. FACTUAL BACKGROUND[1]

## A. THE PARTIES

Zayo is a corporation organized under the laws of Delaware with its principal place of business in Colorado.[2] Zayo is a global provider of communications infrastructure and owns and operates fiber networks, data centers, and small-cell sites used for 5G networks.[3]

Insurer National Union is a corporation organized under the laws of Pennsylvania with its principal place of business in New York.[4]

Insurer ACE is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.[5]

Insurer Arch is a corporation organized under the laws of Missouri with its principal place of business in New Jersey.[6]

---

[1] The Court draws the following facts from the undisputed facts in the pleadings and the documentary exhibits the Parties submitted. Since all Parties moved for summary judgment on the bump-up exclusion issue and don't present argument that there is a factual issue relating to the bump-up clause's applicability, the Court views all submissions accompanying the cross-motions as undisputed facts. Del. Super. Ct. Civ. R. 56(h).

[2] Third Amended Compl. [hereinafter "Compl."] ¶ 11 (D.I. 147); Aff. of William C. Miller in Supp. of Zayo's Op. Br. [hereinafter "Miller Aff."] Ex. 1, DECLARATIONS (D.I. 190).

[3] Affidavit of Lauren Lantero in Supp. of Zayo's Op. Br. [hereinafter "Lantero Aff."] ¶ 5 (D.I. 190).

[4] Compl., ¶ 12; National Union Answer ¶ 12 (D.I. 148).

[5] Compl., ¶ 13; ACE Answer ¶ 13 (D.I. 149).

[6] Compl., ¶ 14; Arch Answer ¶ 14 (D.I. 150).

## B. CONSORTIUM B ACQUIRES ZAYO

In May 2019, Digital Colony Partners and the EQT Infrastructure IV Fund (collectively, "Consortium B") acquired Zayo through a reverse triangular merger (the "Acquisition").[7] Through the Acquisition, Zayo transitioned from a public company to a private one.[8] And Zayo's shareholders received $35 in cash per share of common stock.[9]

## C. THE *CARUSO* ACTION[10]

After the Merger, former Zayo public shareholders sued Zayo's CEO, Dan Caruso, in the Delaware Court of Chancery.[11] Mr. Caruso co-founded Zayo in 2007 and served as Zayo's CEO and Chairman of the Board until October 2020.[12] The plaintiffs—in a one-count complaint—asserted that Mr. Caruso breached his fiduciary duties when conducting the Acquisition.[13] They alleged that Mr. Caruso deliberately botched a public announcement to tank Zayo's stock price and ensure

---

[7] Aff. of Aaron M. Nelson in Supp. of Insurers' Op. Br. [hereinafter "Nelson Op. Br. Aff."] Ex. 4 [hereinafter "Merger Agreement"] (D.I. 189).

[8] Nelson Op. Br. Aff., Ex. 8 at 1; *id*., Ex. 10 at 1; Lantero Aff., ¶ 7.

[9] *Id*., Ex. 10 at 1.

[10] *Teamsters Local 237 Additional Security Benefit Fund et. al. v. Dan Caruso*, C.A. No. 2020-0620 PAF.

[11] Nelson Op. Br. Aff., Ex. 2 [hereinafter "*Caruso* Compl."].

[12] Lantero Aff., ¶ 6.

[13] *See generally Caruso* Compl.

his continued control amid mounting shareholder activism.[14]  In sum, those plaintiffs averred that Mr. Caruso pursued private equity for personal reasons and took actions that lowered Zayo's sale price before the Acquisition.[15]

The Court of Chancery largely dismissed the *Caruso* Complaint but left intact the plaintiffs' claim that Mr. Caruso breached his duty of care by failing to disclose a conversation about the Acquisition to the stockholders before the Acquisition.[16] That conversation showed that Consortium B was willing to purchase Zayo shares at a price above $35 per share.[17]  After some discovery, the parties mediated.[18]  And they settled the *Caruso* Action for $27,125,000.[19]  National Union reimbursed Zayo for certain defense costs incurred to defend the *Caruso* Action.[20]  But the Insurers denied coverage for the settlement.[21]

### D. The Policy and Bump-Up Clause

National Union issued Zayo insurance policy number 02-420-67-57 (the "Policy") for the period of October 17, 2018, through October 17, 2019—later

---

[14]  *Caruso* Compl., ¶¶ 7, 71–77, 79.

[15]  *Caruso* Compl., ¶ 164.

[16]  Miller Aff., Ex. 7.

[17]  *Id*., Ex. 7 at 81–83.

[18]  Lantero Aff., ¶¶ 12–13.

[19]  Miller Aff., Ex. 11 at 9.

[20]  Lantero Aff., ¶ 11.

[21]  Nelson Op. Br. Aff., Ex. 28.

extended to June 2020.[22] Zayo obtained excess policies from ACE[23] and Arch[24] that, unless otherwise noted, follow form to the Policy.[25] Zayo also got a run-off endorsement to the Policy, extending the reporting period to May 2026.[26]

Within the definition of **Loss**, the Policy contains a bump-up clause (the "Bump-Up Clause") excluding coverage for any settlement that represents an effective increase in consideration gained from an acquisition:

> In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.[27]

Lastly, Policy Endorsement 10 contains an allocation provision that requires the **Insureds** and the **Insurer** to use best efforts to determine a proper allocation of the amounts covered as a **Loss**:

> In connection with any **Claim** either (i) made against both **Insureds** covered by this policy for such **Claim** and parties not covered by this policy for such **Claim**, or (ii) alleging matters that are both covered and uncovered under the terms and conditions of this policy, the **Insureds**

---

22   *Id.*, Ex. 1 [hereinafter the "Policy"].

23   Policy Number DOX G26813785 005.

24   Policy Number DOX9300450-04.

25    Nelson Op. Br. Aff., Exs. 23 and 24.

26   *Id.*, Ex. 22.

27   The Policy at 22 [hereinafter the "Bump-Up Clause"].

and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts to be covered as **Loss** by this policy, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insureds** and such uncovered parties.[28]

## E. COVERAGE DISPUTE

Zayo sued to obtain coverage of the $27,125,000 settlement amount Mr. Caruso paid to the Zayo shareholders and alleges that National Union acted in bad faith by refusing to cover the Settlement.[29]

## II. PARTIES' CONTENTIONS

### A. THE INSURERS

The Insurers argue that the Settlement meets all three of the Bump-Up Clause's criteria and therefore the Settlement is excluded from coverage.[30] Those criteria are that: (1) Consortium B acquired Zayo; (2) the *Caruso* Action sought to remedy inadequate consideration; and (3) the Settlement represents an effective increase in consideration.[31] The Insurers also contend that they are entitled to summary judgment on Zayo's bad-faith claim as it is a limited remedy, Zayo can't establish an underlying breach of contract, and the Insurers had a reasonable

---

[28] The Policy, Endorsement 10.

[29] *See generally* Compl. Zayo initially sought to also recover costs incurred in a separate action concerning the Securities Exchange Act and shareholder demands under 8 *Del. C.* § 220. *See generally id*. But the Parties settled these claims. D.I. 159. So the only remaining issue here is the Settlement payment.

[30] *See generally* Defs.' Op. Br. (D.I. 189).

[31] *See generally id*. at 15–41.

justification to deny coverage.[32]

## B. ZAYO

Zayo counters that the Bump-Up Clause doesn't cover the Settlement since: (1) the underlying plaintiffs didn't seek damages for inadequate deal price; and (2) the Settlement doesn't represent an effective increase in consideration.[33] Zayo alternatively avers that, even if some portion of the Settlement amount represents increased consideration, allocation isn't warranted under the Larger Settlement Rule.[34] Under that rule, responsibility for any portion of a settlement should be allocated away from the insured party if the uninsured party's acts are determined to have increased the settlement.[35] On the bad-faith claim, Zayo responds that the Bump-Up Clause clearly doesn't exclude coverage, so the claim has merit.[36]

## III. STANDARD OF REVIEW

This Court can grant a moving party's motion for summary judgment under Delaware Superior Court Rule 56 only when no genuine issue of material fact exists, and the party is entitled to judgment as a matter of law.[37] Summary judgment "will

---

[32] *See generally id*. at 41–45.

[33] *See generally* Pl.'s Op. Br. at 18–27 (D.I. 190).

[34] *See generally id*. at 27–29.

[35] *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1432 (9th Cir. 1995), *as amended on denial of reh'g* (Aug. 1, 1995).

[36] *See generally* Pl.'s Answer. Br. at 30–31 (D.I. 195).

[37] Del. Super. Ct. Civ. R. 56; *Motors Liquid. Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. Ct. June 8, 2017).

not be granted if there is a material fact in dispute"[38] or if "it seems desirable to inquire thoroughly into [the facts] to clarify the application of the law to the circumstances."[39] The moving party has the initial burden "of demonstrating that the undisputed facts support his claims or defenses."[40] If the moving party meets its burden, the burden shifts to the non-moving party to show a "genuine issue for trial."[41] In determining whether such a genuine issue exists, "the Court must view the facts in the light most favorable to that non-moving party."[42] The Court also accepts as true the Parties' factual stipulations.[43]

When parties file cross-motions for summary judgment and don't argue that there are disputed material facts, the Court deems the motions to be the equivalent of a stipulation for a decision on the merits based on the submitted record.[44] Here,

---

[38] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[39] *Ebersole v. Lowengrub*, 180 A.2d 467, 468–69 (Del. 1962).

[40] *Diner v. Plume Design, Inc.*, 354 A.3d 968, 979 (Del. Super. Ct. 2026) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[41] Del. Super. Ct. Civ. R. 56(e); *CNH Indus. Am. LLC v. Am. Casualty Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. Ct. June 8, 2015) ("If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder.").

[42] *Radulski*, 2020 WL 8676027, at *3 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977)).

[43] *Jiggy Puzzles, LLC v. Steelhead Acquisition EE, Inc.*, 2026 WL 465112, at *4 (Del. Super. Ct. Feb. 18, 2026) (citing *Radulski*, 2020 WL 8676027, at *3).

[44] *Mark III Media, Inc. v. Big Horn Television LLC*, 2026 WL 560144, at *3 (Del. Super. Ct. Feb. 27, 2026).

all parties moved for summary judgment and attest that no material facts are disputed concerning the Bump-Up Clause issue.[45] So the Court considers the cross-motions as a stipulation for a decision on the merits concerning the Bump-Up Clause's exclusionary effect.[46]

## IV. DISCUSSION

The Insurers don't have to cover the Settlement because the Bump-Up Clause excludes coverage. The record establishes that the Settlement represented an increase in consideration to the underlying shareholders. Notably: (1) the underlying Zayo shareholders sued Mr. Caruso for inadequate consideration from the Acquisition; (2) the Settlement amount went to the allegedly injured shareholders on a per-share basis; (3) the parties mediated and had completed some discovery at the time of the Settlement; and (4) Mr. Caruso didn't stipulate in the Settlement that he was settling solely to avoid continued litigation costs. Also, since the Bump-Up Clause excludes the entire Settlement amount, there is no allocation issue, and the Larger Settlement Rule is inapplicable.

Resultingly, the Insurers are entitled to summary judgment on Zayo's bad-

---

[45] D.I. 189; D.I. 190; *see also* Pl.'s Answer Br. at 12 ("By Filing Cross-Motions for Summary Judgment, the Parties Seek a Decision from the Court on the Bump-Up Exclusion Issue Based on the Record Submitted.").

[46] Del. Super. Ct. Civ. R. 56(h); *see also Pike Creek Recreational Servs., LLC v. New Castle Cnty.*, 238 A.3d 208, 213 (Del. Super. Ct. 2020), *aff'd,* 259 A.3d 724 (Del. 2021); *United Westlabs, Inc. v. Greenwich Ins. Co.*, 2011 WL 2623932, at *8 (Del. Super. Ct. June 13, 2011), *aff'd,* 38 A.3d 1255 (Del. 2012).

faith claim since there is no underlying breach, and Zayo has no evidence of bad faith by the Insurers.  Because the Bump-Up Clause excludes coverage, the Insurers didn't breach the Policy by declining to cover the excluded Settlement amount.

## A. TOWERS WATSON AND HARMAN BACKDROP

Bump-up clauses with the same language at issue here exclude settlement coverage when the settlement's actual result increases consideration.

In *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA* [hereafter *Towers Watson II*], the United States Court of Appeals for the Fourth Circuit affirmed a district court decision that a bump-up clause excluded coverage.[47] That clause prevented coverage if:  (1) there was a claim alleging consideration paid; and (2) the settlement represented an effective increase in the consideration shareholders got for the acquisition.[48]  The court found that the underlying action asserting claims under federal securities law and Delaware law satisfied the first prong.[49]  On the second prong, the court opined that the settlement represented an effective increase in consideration.[50]  In doing so, the court observed that the lawsuit sought to rectify a shortfall in the merger process that devalued the shareholders' stocks and that the settlement compensated the shareholders for the purportedly

---

[47]   138 F.4th 786, 789 (4th Cir. 2025).

[48]   *Towers Watson II*, 138 F.4th at 793.

[49]   *Id*. at 790, 793.

[50]   *Id*. at 793–94.

inadequate consideration they received from the merger.[51]

By contrast, in *Illinois Nat'l Ins. Co. v. Harman Int'l Indus., Inc.* [hereafter *Harman III*], our Supreme Court held that a bump-up clause—with the same language as the clause in *Towers Watson II*—did not exclude coverage.[52] That underlying suit—based on Section 14(a) claims—relied on allegations of inadequate consideration and sought damages for inadequate price or consideration.[53] But the Court ruled that the settlement didn't represent an effective increase in consideration.[54] The Court distinguished *Harman*'s facts from those in *Towers Watson II*.[55] And it outlined that: (1) the settlement class included Harman shareholders who held stock at any time, without requiring class members to hold stock through the transaction's closing date; (2) the underlying action settled early in the litigation; and (3) the settlement amount was based on the cost of continuing litigation, falling almost directly in the center of the estimated range of litigation costs.[56] Two justices dissented and would have found that the settlement represented

---

[51]  *Id*. at 793–96.

[52]  *Illinois Nat'l Ins. Co. v. Harman Int'l Indus., Inc.*,---A.3d----, 2026 WL 204209, at *1, 7 n.66 (Del. Jan. 27, 2026) [hereinafter "*Harman III*"].

[53]  *Harman III*, 2026 WL 204209, at *8–10.

[54]  *Id*. at *10–14.

[55]  *Id*.

[56]  *Id*.

an increase in consideration.[57]

Here, the *Caruso* Action and the Settlement are far more aligned with the facts in *Towers Watson II*.

## B. THE BUMP-UP CLAUSE EXCLUDES COVERAGE.

"[T]he interpretation of contractual language, including that of insurance policies, is a question of law."[58]  And the Insurers shoulder the burden of proving any coverage exclusion's applicability.[59]  If the exclusion applies and the language "is clear and unequivocal,"[60] the exclusionary clause[61] will be construed "narrowly to give effect to the interpretation most beneficial to the insured" based on its plain meaning.[62]

This Bump-Up Clause is identical to the clause in *Towers Watson II* and *Harman* and says that coverage is excluded when: (1) the underlying claim alleges

---

[57]   *Id*. at *15 (Seitz, C.J. and Traynor, J., dissenting).

[58]   *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001); *see also Eagle Force Hldgs., LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018) (noting that whether a contract's material terms are sufficiently defined is mostly, if not entirely, a question of law).

[59]   *Harman Int'l Indus., Inc. v. Illinois Nat'l Ins. Co.*, 2025 WL 84702, at *5 (Del. Super. Ct. Jan. 7, 2025) [hereafter *Harman II*].

[60]   *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

[61]   Although found within the **Loss** provision, the Bump-Up Clause operates as an exclusion based on its exclusionary effect.  *See Clear Channel Outdoor Hldgs., Inc. v. Illinois N. Ins. Co.*, 2026 WL 1347392, at *9 (Del. Super. Ct. Apr. 28, 2026) (holding that the insurers had the burden to prove that a disgorgement amount was excluded, even though it was found in a loss provision of that policy).

[62]   *Gallup, Inc. v. Greenwich Ins. Co.*, 2015 WL 1201518, at *9 (Del. Super. Ct. Feb. 25, 2015).

inadequate deal consideration in an acquisition; and (2) the settlement amount represents an amount by which the alleged inadequate deal consideration was effectively increased.[63]

**1. The underlying plaintiffs' suit alleged an inadequate deal price.**

To satisfy the first Bump-Up Clause criterion, the Insurers must establish: (1) a claim; (2) an allegation that the price or consideration was inadequate; and (3) an acquisition.[64]

*First*, Zayo doesn't meaningfully dispute that the *Caruso* Action wasn't a claim.[65] And indeed, the underlying suit was a claim, as it was a lawsuit against Zayo's CEO seeking damages arising from the Acquisition.[66]

*Second*, the underlying complaint alleges that the price and consideration were inadequate. In the *Caruso* Complaint, the underlying plaintiffs alleged a breach of fiduciary duty "in connection with [Zayo]'s sale" and sought damages for "unfair Merger consideration."[67] And the only theory that survived the motion to dismiss in Chancery asserted that Mr. Caruso breached his duty of care by failing to disclose a

---

[63]   *Compare* the Bump-Up Clause, *with Harman III*, 2026 WL 204209, at *2.

[64]   *Harman III*, 2026 WL 204209, at *8.

[65]   *See* Pl.'s Op. Br. at 18–27 (only arguing that the underlying plaintiffs didn't seek damages for an inadequate deal price, not that there was no claim at all).

[66]   *See Claim*, BLACK'S LAW DICTIONARY 312 (12th ed. 2024) ("A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for. — Also termed claim for relief (1808).").

[67]   *Caruso* Compl., ¶¶ 163, 165.

conversation about the Acquisition to the stockholders.[68]  Accordingly, the underlying complaint in the *Caruso* Action sought increased consideration.

On this point, Zayo contends that the *Caruso* Action didn't seek an increase in consideration as the underlying plaintiffs' claims targeted Mr. Caruso's alleged pre-transaction depression of Zayo's value as a go-forward entity—not inadequate negotiation of the deal price.[69]  That's a creative take.  But a pre-deal price depression still results in an inadequate price at the time of the Acquisition, since Zayo's price would have been artificially lowered before its sale, and the buyer would then pay less.  And the Bump-Up Clause doesn't say that the underlying Claim must "only" or "solely" allege inadequate deal price as the only claim.[70]  The Bump-Up Clause also doesn't mandate that the underlying Claim be brought against Zayo—just that it seeks inadequate consideration.  Simply put, the Claim could conceivably be against any defendant, so long as it seeks increased consideration regarding the Acquisition.

*Third*, there was an acquisition.  Again, Zayo doesn't meaningfully contend that the Acquisition wasn't an acquisition under the Bump-Up Clause.[71]  And this

---

[68]  Miller Aff., Ex. 7.

[69]  Pl.'s Answer. Br. at 24 (D.I. 195).

[70]  *See* the Bump-Up Clause.

[71]  *See* Pl.'s Op. Br. at 18–27 (only arguing that the underlying plaintiffs didn't seek damages for an inadequate deal price, not that there was no claim at all).

Court has held that a reverse triangular merger is an acquisition under identical bump-up clause language.[72] So the *Caruso* Action sought damages for inadequate deal consideration and provided a basis for exclusion under the Bump-Up Clause.

## 2. The entire Settlement amount represents an effective increase in consideration.

The Insurers satisfy the second criterion by showing that the Settlement's "real result" is that the Settlement amount, or any portion of it, increased the amount of deal consideration the shareholders received in the Acquisition.[73]

Looking at the Settlement's language, Mr. Caruso denied any allegations of wrongdoing, fault, or liability.[74] He settled solely because he considered it desirable to dismiss the action with prejudice and considered: (1) the uncertainties and expense of further litigation; and (2) to put all claims to rest in the action.[75] The underlying plaintiffs stipulated that, while they believed their claims were meritorious, the Settlement provided a substantial and immediate benefit to the Class.[76] Still, the underlying plaintiffs considered the litigation risks and the expense of continued proceedings.[77] Unlike *Harman*, Mr. Caruso didn't stipulate that he

---

[72] *Harman II*, 2025 WL 84702, at *7.

[73] *Harman III*, 2026 WL 204209, at *10.

[74] Miller Aff., Ex. 11 ¶ QQ.

[75] *Id*., Ex. 11 ¶ RR.

[76] *Id*., Ex. 11 ¶ OO.

[77] *Id*.

- 15 -

settled *solely* to avoid continued costs.[78]  Instead, Mr. Caruso *only considered* the costs of continued litigation.  With that, the Settlement language doesn't provide a sole intention when settling.  The Settlement's language, thus, doesn't provide much weight to either Party's argument as to what it represented.  So the Court turns to other evidence to determine the real result of the Settlement.

There are strong indicators that the Settlement represented compensation for an inadequate deal price.  Mr. Caruso paid the allegedly injured shareholders on a per-share basis and only to those who held stock at closing and therefore received consideration from the Acquisition.[79]  The Settlement also occurred after about a year of discovery, and the shareholders obtained and reviewed over 16,000 documents from Mr. Caruso and third parties before settling—supporting the notion that the Settlement represents an increase in consideration and not mere litigation avoidance.[80]  Although there was lengthy motion practice during this time, [81] the parties still exchanged documents and conducted some discovery.[82]  So, while maybe

---

[78]  *Harman III*, 2026 WL 204209, at *14.

[79]  Miller Aff., Ex. 11 at 28 ¶ 5.

[80]  *Id*., Ex. 11 at 5–9.

[81]  July 1, 2026 Hr'g Tr. at 19–20 (D.I. 213) ("A few years had gone by in the litigation.  That doesn't mean the stage had progressed very long.  There had been lengthy motion to dismiss practice, lengthy document discovery fights, including motions to compel.  There was a motion to bifurcate, which was granted.  And nothing else.").

[82]  *Id*. at 38–39 ("the *Caruso* action involved resolute litigation effort over the course of approximately four years, substantial fact discovery, including production of nearly 90,000 pages of documents, and hotly contested negotiations and motion practice.").

not as far along as the underlying lawsuit in *MSG Networks Inc. v. Federal Insurance Co.*,[83] there was still some discovery and mediation complete at the time of the Settlement. As a result, the facts here are analogous to those in *Towers Watson II*, and the Insurers have shown that the Settlement is an effective increase in consideration.[84]

In response, Zayo highlights that the $27.125 million Settlement amount is much less than the amount sought in some of the underlying plaintiffs' other damage theories.[85] Yet, as Zayo acknowledges, the Court of Chancery dismissed those other theories.[86] Granted, Zayo presents evidence that the underlying plaintiffs intended to re-plead the dismissed claims, and the Settlement resolved those claims.[87] But this evidence doesn't overcome the fact that the Settlement amount went directly to the injured shareholders, who sued over the Acquisition's allegedly inadequate price.[88] *Harman* was unique in that there was a cost estimate, and the Settlement

---

[83] 2026 WL 1822345, at *10 (Del. Super. Ct. June 11, 2026).

[84] *See Towers Watson II*, 138 F.4th at 793–96 (finding that a settlement represented a bump up in consideration where the underlying stockholders sued to increase their consideration and the settlement compensated them).

[85] Pl.'s Answer Br. at 17–19.

[86] Pl.'s Reply at 9 (D.I. 204).

[87] *Id*. at 9–10.

[88] The Bump-Up Clause doesn't require the increase in consideration to be substantial or that the underlying plaintiffs had to get most of what they sought. Still, the underlying plaintiffs received increased consideration from the Settlement, and this directly increased the consideration they received from the Acquisition. *See* Aff. of Aaron M. Nelson in Supp. of Insurers' Ans. Br. [hereinafter "Nelson Ans. Br. Aff."], Ex. O at 235 (Zayo Expert Dep.) ("ultimately the settlement accounted for twelve cents per share. That's not a meaningful increase in price to me. That shows

amount fell directly within that estimate—demonstrating that the settlement didn't

represent an increase in consideration.[89]   Although there were no cost or damages

prediction pre-Settlement, the Settlement amount here went only to the injured

shareholders who received consideration from the Acquisition.[90]   This is largely

determinative and carries more weight than Zayo's arguments that the Settlement

represented the costs of litigation.[91]   Too, the underlying plaintiffs represented to the

---

that they're settling claims for the alleged breach of fiduciary duty.") (D.I. 194); *see also id.*, Ex.
E at 30 (Settlement Hearing):

> The plaintiffs also faced the prospect of protracted litigation following the Court's
> granting of the defendants' motion to bifurcate the adjudication of liability and
> damages. Considering the risks the plaintiffs faced of unfavorable rulings on
> liability and damages, the $27,125,000 settlement is a very good recovery. This
> amounts to about 12 cents per share, 12 percent of the difference between the high
> end of Digital Venture's price optimism and the price its investor consortium
> actually paid.  Altogether, the Court finds the "get" here to be reasonable.

[89]   *Harman III*, 2026 WL 204209, at \*14.

[90]   July 1, 2026 Hr'g Tr. at 36 ("Payments were made on a per-share basis to shareholders who
held eligible shares defined as shares for which the holder received transaction consideration.");
Miller Aff., Ex. 11 at 15 ("'Eligible Beneficial Owner' means the ultimate beneficial owner of any
shares of Zayo common stock held of record by Cede & Co., Inc. ('Cede') at the time such shares
were converted into the right to receive the merger consideration in connection with the
Transaction, provided that no Excluded Person may be an Eligible Beneficial Owner."); *see also
id.* ("'Eligible Record Holder' means the record holder of any shares of Zayo common stock, other
than Cede, at the time such shares were converted into the right to receive the merger consideration
in connection with the Transaction, provided that no Excluded Person may be an Eligible Record
Owner.").

[91]   *See MSG Networks Inc. v. Federal Insurance Co.*, 2026 WL 1822345, at \*10 (Del. Super. Ct.
June 11, 2026) ("[T]he Class A Shareholders comprised the class that exclusively sought an
increase in consideration.  These facts are of particular import as: (1) the Class A Shareholders
received consideration from the Merger; (2) they sued to boost the consideration they got; and (3)
they were directly paid because of their suit.  This shows that the Settlement represented an
increase in consideration.  So, upon a hard look at what the Settlement represents, the Insurers
have shown it constitutes an increase in consideration."); *see also Ceradyne, Inc. v. RLI Ins. Co.*,
2022 WL 16735360, at \*11 (C.D. Cal. Oct. 31, 2022) (holding that the record reflected that
settlement was intended to, and did, increase shareholder consideration because the underlying
shareholders received additional consideration on top of what they got from the underlying

Court of Chancery that the gross Settlement amount constitutes a "meaningful portion" of the $ 1-per-share difference between the Acquisition price and the price that Consortium B discussed in the conversation that Mr. Caruso failed to disclose.[92] And that claim survived the motion to dismiss before the Settlement.[93]

Zayo also asserts that, under the Larger Settlement Rule,[94] if only a portion of the Settlement amount represents increased consideration, then the Insurers must show that the Settlement amount was higher than it would have been had only covered claims been settled.[95] This Court has declined to extend the Larger Settlement Rule beyond the allocation situation involving indemnifiable and non-indemnifiable parties.[96] Here, there are no indemnifiable and non-indemnifiable parties involved—just, according to Zayo, covered and uncovered portions of the Settlement amount.[97] As a result, the Larger Settlement Rule is inapplicable because there are no uninsured parties involved.

acquisition).

[92] Nelson Ans. Br. Aff., Ex. D at 16.

[93] Miller Aff., Ex. 7 at 81–83 (D.I. 190).

[94] *See generally Arch Ins. Co. v. Murdock*, 2020 WL 1865752, at *7 (Del. Super. Ct. Jan. 17, 2020) ("The Larger Settlement Rule provides that 'allocation is appropriate only if, and only to the extent that, the defense or settlement costs of the litigation were, by virtue of the wrongful acts of the uninsured parties, higher than they would have been had only the insured parties been defended or settled.'").

[95] Pl.'s Reply Br. at 20.

[96] *SS&C Techs. Holdings, Inc. v. Endurance Assurance Corp.*, 2022 WL 1222930, at *2 (Del. Super. Ct. Apr. 26, 2022).

[97] July 1, 2026 Hr'g Tr. at 22.

But even if the Court considered the Larger Settlement Rule, the entire Settlement amount represents an effective increase in consideration, since there is no distinction between covered and uncovered claims. Again, the entire underlying action sought an increase in consideration, and the entire Settlement amount represents an increase in consideration to the underlying shareholders.[98] So there is no allocation issue as there is no mix of coverage within the Settlement amount.

At bottom, the Settlement's real result gave the injured shareholders in the underlying action—all of whom received consideration from the Acquisition— additional consideration. The Insurers have met their burden to show that the Bump-Up Clause excludes coverage in this instance. And Zayo fails to provide a meaningful rebuttal to the overwhelming evidence showing an increase in consideration for the shareholders.

## C. THE INSURERS ARE ENTITLED TO SUMMARY JUDGMENT ON ZAYO'S BAD-FAITH CLAIM.

Bad-faith insurance denial claims are actionable where the insured can show that the insurer's denial of benefits was clearly without reasonable justification.[99] Reasonable justification requires that, at the time of denial, the insurer knew of facts or circumstances that created a *bona fide* coverage dispute and thus a meritorious

---

[98] *See Genzyme Corp. v. Fed. Ins. Co.*, 622 F.3d 62, 73 (1st Cir. 2010) (holding that, because the entire settlement payment was excluded under a bump-up provision, there was no allocation issue).

[99] *Geico Gen. Ins. Co. v. Green*, 308 A.3d 132, 144 (Del. 2022); *Zurich Am. Ins. Co. v. Syngenta Crop Prot. LLC*, 314 A.3d 665, 683 (Del. 2024).

defense to liability.[100] An insurer's actions can only give rise to a bad-faith breach-of-contract claim if the insurer's actions are first demonstrated to breach the contract.[101] Thus, to prevail on this claim, Zayo must prove that there was a breach of contract and, secondly, that the breach was clearly without any reasonable justification.[102]

Because the Bump-Up Clause excludes coverage, Zayo cannot show a breach of contract. The reason is that the Policy doesn't require the Insurers to cover the Settlement amount, so the Insurers didn't breach the Policy by refusing to do so. Without an underlying breach, there can be no bad-faith claim. As a result, the Insurers are entitled to judgment as a matter of law on this claim.

## V. CONCLUSION

At bottom, the Settlement's real result gave the Zayo shareholders increased consideration for the Acquisition. Zayo zooms in on certain facts in the lead-up to the Settlement to contend that the Settlement amount had nothing to do with an increase in consideration. But, in the aggregate, these isolated facts cannot overcome the underlying injured shareholders receiving compensation on a per-share basis for a lawsuit alleging that Mr. Caruso caused Zayo to be undervalued in

[100] *Syngenta*, 314 A.3d at 683.

[101] *Green*, 308 A.3d at 144.

[102] *Id*. at 144–45.

the Acquisition.

For these reasons, the Court **DENIES** Zayo's Motion for Partial Summary Judgment and **GRANTS** the Insurers' Motion for Summary Judgment.

**IT IS SO ORDERED.**

*/s/ **Paul R. Wallace***
Paul R. Wallace, Judge
